CENTER FOR DISABILITY ACCESS
Amanda Seabock, Esq., SBN 289900
Chris Carson, Esq., SBN 280048
Dennis Price, Esq., SBN 279082
Mail: 8033 Linda Vista Road Suite 200
San Diego CA 92111
(858) 375-7385; (888) 422-5191 fax
dennisp@potterhandy.com

Attorneys for Plaintiff SCOTT JOHNSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, | **Case:** 5:19-cv-08075-EJD |
| Plaintiff, | |
| v. | **Notice of Motion and Memorandum of Points and Authorities in Support of Motion for An Award of Attorney's Fees** |
| **Edward K. Li,** in individual and representative capacity as trustee of The Li Family Trust dated March 10, 1988;<br>**Debra Li,** in individual and representative capacity as trustee of The Li Family Trust dated March 10, 1988;<br>**Jianwei Shou**; and Does 1-10, | Date:    June 25, 2020<br>Time:    9:00 a.m.<br>Ctrm:    4 (5ᵗʰ Floor) |
| Defendants. | Hon. Edward J. Davila |

# TABLE OF CONTENTS

I.  NOTICE OF MOTION ...................................................................1

II.  PRELIMINARY STATEMENT ...................................................1

III.  REASONABLENESS OF FEES.................................................2

    A.  Hourly Rates ..................................................................... 3

    B.  Hours Reasonably Expended .........................................14

IV.  HENSLEY FACTORS ...........................................................15

    A.  Time and Labor Required ...............................................15

    B.  Novelty and Difficulty of Issues......................................16

    C.  Skill Required to Perform Legal Service ...........................16

    D.  Preclusion of Other Work ...............................................17

    E.  Customary Fee ................................................................18

    F.  Fixed or Contingent Fee .................................................18

    G.  Time Limitations ............................................................18

    H.  Amount Involved and Results Obtained ...........................18

    I.  Experience and Ability of Attorneys ................................19

    J.  Undesirability of the Case ...............................................19

    K.  Nature of Relationship with Client...................................20

    L.  Awards in Similar Cases..................................................20

V.  LITIGATION COSTS................................................................20

VI.  CONCLUSION ......................................................................21

i

# TABLE OF AUTHORITIES

## Cases

*Armstrong v. Brown* (N.D. Cal. 2011) 805 F. Supp. 2d 918................................11

*Blackwell v. Foley*,

    724 F. Supp. 2d 1068 (N.D. Cal. 2010) ...................................................... 3, 13

*Boemio v. Love's Restaurant*,

    954 F.Supp. 204 (S.D. Cal. 1997) ...................................................................19

*Camacho v. Bridgeport Financial, Inc.* (9th Cir. 2008) 523 F.3d 973 ...............10

*Chapman v. NJ Properties* (2019) 5:16-cv-02893-EJD ......................................11

*Chapman v. NJ Properties* (N.D. Ca., 2019) 2019 WL 3718585 .........................5

*Chapman v. Schellville Grill* (N.D. Ca., 2017) 2017 WL 2888581 ......................5

*Civil Rights Education and Enforcement Center v. Ashford Hospitality Trust, Inc.*

    (2016) 2016 WL 1177950 ...............................................................................11

*Dytch v. Lazy Dog Restaurants, LLC* (N.D. Cal., 2019) 2019 WL 3928752 .....11

*Elder v. National Conference of Bar Examiners* (N.D. Cal. Sept. 12, 2011) C-11-

    00199-SI, 2011 WL 4079623............................................................................11

*Estrada v. Mirlan* (CD Ca. 2019) 5:18-cv-01892-JGB .......................................9

*Fernandez v. Salgado* (CD Ca.) 2:19-cv-01817-SK ............................................9

*Hasbrouck v. Texaco, Inc.* (9th Cir. 1989) 879 F.2d. 632 ....................................7

*Jankey v. Poop Deck*,

    537 F.3d 1122 (9th Cir. 2008) ..........................................................................2

*Johnson v. Altamira* (N.D. Ca, 2017) 2017 WL 1383469.................................5, 6

*Johnson v. Oak Creek* (2019) 5:18-cv-04645-EJD ..............................................11

*Koire v. Metro Car Wash*,

    40 Cal.3d 24 (1985) ................................................................................. 18, 19

*Langer v. Gutierrez* (CD Ca. 2019) 04963-AB-JPR............................................9

*Lindy Bros. Builders, Inc. of Phila. v. American Radiator,*

    487 F.2d 161 (3rd Cir 1973) ........................................................14

*Lovell v. Chandler*

    (9th Cir. 2002) 303 F.3d 1039 ..................................................21

*Martin v. Diva Hospitality Group, Inc.* (2018) 2018 WL 6710705 ...................11

*Roberts v. City of Honolulu* (9th Cir. 2019). 938 F.3d 1020............................12

*Rodriguez v. Barrita, Inc* (2014) 53 F.Supp.3d 1268..........................................11

*Serrano v. Priest,*

    20 Cal.3d 25 (1977) ..................................................................14

*Shaw v. Five M, LLC* (N.D. Ca, 2017) 2017 WL 747465 .......................5, 6

*Van Gerwen v. Guarantee Mutual Life,*

    214 F.3d 1041 (9th Cir. 2000) ..................................................15

*Wehr v. Burroughs Corp.,*

    477 F.Supp. 1012 (E.D.Pa. 1979)................................................3

*Welch v. Metropolitan Life Ins. Co.,*

    480 F.3d 942 (9th Cir. 2007) ......................................................4


**Statutes**

42 U.S.C. § 12205................................................................. 2, 19

Cal. Civ. § 52(a) ........................................................................2

# I.  NOTICE OF MOTION

To Defendants Edward K. Li, Debra Li, in individual and representative capacity as trustees of The Li Family Trust dated March 10, 1988, and Jianwei Shou, and to their attorneys on record:

Please take notice that on June 25, 2020 at 9:00 a.m. or as soon thereafter as the matter may be heard in the courtroom of the Honorable Edward J. Davila, located at 280 South 1st Street, San Jose Courthouse, San Jose, California, Plaintiff Scott Johnson will and hereby does move this Court to award his reasonable attorney fees and costs in the amount of $10,955.00 pursuant to 42 U.S.C. § 12205, California Civil Code § 52(a).

This motion is brought based on the agreement of the parties, having accepted an FRCP Rule 68 offer of judgment. This motion will be based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the declarations and other exhibits, and all papers on file in this case.

# II.  PRELIMINARY STATEMENT

Mr. Johnson is a person with disabilities who uses a wheelchair for mobility. He sued the defendants as owners and operators of the real property located at 520 S. Murphy Avenue, Sunnyvale, California, for failure to provide accessible paths of travel, accessible sales counters and restrooms although the law has required it since 1992. On April 14, 2020, the court entered Judgment in favor of the Plaintiff pursuant to an accepted Rule 68 Offer of Judgment. The judgment entitles Plaintiff to $6,500 and all reasonable costs and attorney's fees incurred from his

suit.[1] Plaintiff now moves for fees and costs under the Offer of Judgment, and as prevailing party under the Americans with Disabilities Act and Unruh Civil Rights Act.

### III.  REASONABLENESS OF FEES

Under the American with Disabilities Act, attorney's fees are available to a prevailing party[2][3]. Additionally, under the Unruh Civil Rights Act, a defendant "is liable for" any attorney fees" suffered by any person denied the rights" provided for under Unruh. Cal. Civ. § 52(a). Additionally, the Offer of Judgment accepted in this matter explicitly entitles Plaintiff to recovery of attorney's fees. Successful litigants are entitled to reasonable attorney fees "to ensure effective access to the judicial process for persons with civil rights grievances."[4] "If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Consequently, recovery is the rule rather than the exception."[5]

This is a civil right entitlement, not a windfall. "It must be remembered that an award of attorneys' fees is not a gift. It is just

---

[1] Plaintiff sought injunctive relief in his complaint. The rule 68 offer of judgment addresses the injunctive relief, as such no separate relief is requested here.

[2] 42 U.S.C. § 12205

[3] The Offer of Judgment contains a provision for damages, as well as injunctive relief. As this has resulted in a judicially enforceable judgment, Plaintiff is a prevailing party on both causes of action.

[4] *Hensley v. Eckerhart* (1983) 461 U.S. 424, 429

[5] *Jankey v. Poop Deck* (9th Cir. 2008) 537 F.3d 1122, 1131 (internal citations omitted).

compensation for expenses actually incurred in vindicating a public right."[6]

The "fundamental objective" of attorney fee statutes is "to encourage suits effectuating a strong policy by awarding **substantial attorney's fees** ... to those who successfully bring such suits . . .."[7] To accomplish this, the award must be large enough "to entice competent counsel to undertake difficult public interest cases."[8] Thus, there is a "requirement of an award of substantial attorney fees" in these disability access civil rights cases.[9]

The documentation submitted in support of a request for attorney fees should be sufficient to satisfy the court, or indeed a client, that the hours expended were actual, non-duplicative and reasonable and to appraise the court of the nature of the activity and the claim on which the hours were spent.[10] The billing statements attached as Exhibit 2 meet this standard.

### A.    Hourly Rates

A reasonable hourly rate reflects the skill and experience of the lawyer, including any relevant areas of particular expertise, and the

---

[6] *City of Sacramento v. Drew* (1989) 207 Cal. App. 3d 1287, 1304

[7] Woodland Hills Residents Ass'n., Inc. v. City Council (1979) 23 Cal.3d 917, 933 (emphasis added).

[8] San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino (1984) 155 Cal.App.3d 738, 755

[9] *Blackwell v. Foley* (N.D. Cal. 2010) 724 F. Supp. 2d 1068, 1076 (a disability access case involving both the ADA and Unruh Civil Rights Act)

[10] *See Hensley*, 461 U.S. at 437; *Wehr v. Burroughs Corp.* (E.D.Pa. 1979) 477 F.Supp. 1012, 1016–18, *modified on other grounds* at *Wehr v. Burroughs Corp.* (3rd Cir. 1980) 619 F.2d 276

nature of the work performed.[11] The reasonable market value of the attorney's services is the measure of a reasonable hourly rate.[12] This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represented the client on a straight contingent fee basis, or are in house counsel.[13]

### 1. Rates of Handling Attorneys

This matter was staffed by multiple attorneys, delegating work where appropriate to reduce the overall number of hours and total costs needed on the case. Plaintiff's firm has cultivated an innovative staffing approach[14] in which each attorney is assigned discrete tasks and able to become experienced in narrow aspects of litigation in a short period of time.[15]

In this system, even newer associates become experienced contributors in their trained niche in short order. Each attorney is able to

---

[11] *See Hensley*, 461 U.S. at 433-34.

[12] *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1094

[13] *Id.*; *see also Welch v. Metropolitan Life Ins. Co.* (9th Cir. 2007) 480 F.3d 942, 946

[14] The traditional commercial firm structure has been called into question by multiple courts and scholars. *Chabner v. United of Omaha Life Ins. Co.* (N.D Cal., 1999) 1999 WL 33227443, 3*, affd., (2000) 225 F.3d 1042; *Nat'l Fed of the Blind v. Target Corp.* (N.D. Cal., 2009) 2009 WL 2390261, 3*; Barak D. Richman, <u>Contracts Meet Henry Ford</u>, 40 *Hofstra Law Review* 77-86 (2011). (Arguing that an assembly approach to legal document generation provides value to clients.) Center for Disability Access agrees that this traditional approach is not efficient and works counter to the focus on specialization occurring within the profession today.

[15] Exhibit 1 - Decl. of Mark Potter ¶ 5-6

put a specialized focus on particular tasks at a gain of both efficiency and effectiveness within that task.[16] To the extent any duplication of efforts occurs as a result of this staffing method, counsel has exercised billing judgment and those billing entries are not included in the amount sought for compensation, as anticipated by *Hensley*.[17] In exercising further billing judgment, at no time is an attorney billed for reviewing the work of another, or familiarizing themselves with a file.[18] Anytime counsel would confer with one another regarding any matter, only one attorney is billed. Thus, while the overall number of attorneys that play a role in the development of one of counsel's ADA cases might be higher than that seen in other firms, the *total hours* spent in litigation, and the total costs, are lower than other staffing strategies.[19] This is not just a theoretical claim, as examples can be shown by comparing *Johnson v. Altamira* and *Shaw v. Five M, LLC,* where present counsel sought 9.6 and 9.8 on default judgment against *Chapman v. Schellville Grill*, where another firm billed over 30 hours on a similar case in the same posture.[20] Here, counsel engaged in significant litigation, exhausting nearly the entire GO 56 process, and still billed barely more than half the time another firm spent on a default judgment! Using these examples, Center for Disability

---

[16] Id.

[17] *Id.* ¶ 7.

[18] *Id.*

[19] *Id.* ¶ 6.

[20] *Johnson v. Altamira* (N.D. Ca, 2017) 2017 WL 1383469; *Shaw v. Five M, LLC* (N.D. Ca, 2017) 2017 WL 747465; *Chapman v. Schellville Grill* (N.D. Ca., 2017) 2017 WL 2888581; *see also Chapman v. NJ Properties* (N.D. Ca., 2019) 2019 WL 3718585 (another firm billed 162 hours on an ADA/Unruh case that settled prior to trial.)

Access plainly demonstrates the real, not just theoretical, value provided by this technique.

The billing demonstrates that this division of labor did not incur additional hours and reflects specialization and delegation of tasks to more junior attorneys. A description of each handling attorney's work and billing rates are detailed in the Declaration of Mark Potter.[21]

### 2. History of the Prevailing Rate in the Northern District

Counsel for plaintiff has a long history of litigating ADA claims throughout the state of California over 20+ years, however, the bulk of litigation has been in the Southern and Central Districts until relatively recently. As a result, there is an abundance of attorney's fees history for those Districts. In the firm's first fee motion filed in this District, *Colston v. Shakti,*[22] the court was unable to establish a prevailing rate based on Northern District rulings and adopted the rates set by the Central District at the time. As a result of the efficiency of General Order 56 in resolving ADA claims, very few cases continue to summary judgment or trial. Subsequently, virtually all fee history in the district has been via default judgments. In many of those early cases counsel sought his Central District rates,[23] and being much lower than those typically awarded in the Northern District, understandably the courts granted those requests

---

[21] Exhibit 1 ¶¶ 4;8-10

[22] *Colston v. Shakti* (2015) 5:15-cv-02306-NC

[23] *Johnson v. Altamira* (N.D. Ca, 2017) 2017 WL 1383469; *Shaw v. Five M, LLC* (N.D. Ca, 2017) 2017 WL 747465.

without further analysis, often citing to *Colson,* or other default judgment cases in the Northern District.[24]

As counsel's practice in the Northern District expanded and the Center for Disability Access began hiring dedicated attorneys to work in the Bay Area and litigation expenses increased, the firm began reassessing the proper rate to seek in litigation for cases in the Northern District. Using the Real Rate Report, the Laffey Matrix and reference to cases from other counsel, he began seeking the increased rates sought here. The first judge to address those rates with reference to the *Hensley* test, Judge Laporte in *Love v. Rivendell II*[25], agreed that the rates were within the prevailing rates in the community. This was not a formality, simply signing off on fees as requested due to the default nature of the request, as Judge Laporte[26] enumerated the qualifications of each attorney with careful analysis citing to a variety of Northern District cases involving counsel other than those present in this case to establish the baseline rate for the Northern District:

> "These requested rates are consistent with hourly rates that have been approved for attorneys with similar experience and qualifications in this District in ADA cases. See Rodriguez v. Barrita, 53 F. Supp. 3d 1268, 1278-79 (N.D. Cal. 2014) (approving $425 hourly rate of attorney with five years of disability litigation experience and $550 hourly rate for an attorney with over two

---

[24] *Hasbrouck v. Texaco, Inc.* (9th Cir. 1989) 879 F.2d. 632, 639 (suggesting it would be improper to award a rate greater than that sought by counsel).

[25] *Love v. Rivendell II* (N.D. Cal. 2019) 18-cv-03907-JST-EDL.

[26] This order was reviewed and approved by District Judge Jon S. Tigar on April 18, 2019.

decades of litigation experience); <u>Civil Rights Educ. & Enforcement Ctr. v. Ashford Hospitality Trust, Inc.</u>, 2016 WL 1177950, at *5 (N.D. Cal. Mar. 22, 2016) (approving hourly rate of $900 for 1974 law school graduate who previously asserted as Assistant U.S. Attorney General for Civil Rights and has litigated antidiscrimination cases for 40 hours, $750 for a 1991 law school graduate who is considered a leading disability rights class action practitioner, and $500 for a 2007 law school graduate who litigates civil rights class actions and impact litigation); <u>Elder v. Nat'l Conf. of Bar Examiners</u>, 2011 WL 4079623, at *4 n.4 (N.D. Cal. Sept. 12, 2011) (approving rate of $730 per hour and $760 per hour for attorneys with approximately three decades of civil rights litigation experience, $535 per hour for an attorney with 8 years of civil rights work, and $350 per hour for an attorney with 4 years of experience)."[27]

However, other courts, disagreeing with Judges Laporte and Tigar, have continued to award substantially identical but lower rates referring back to the cases decided based on the 2011 *Rite Aid* Central District case and its progeny without faithfully applying the *Hensley/Kerr* tests. As acknowledged by one court awarding lower rates as requested by counsel, these rates have always been below or at the bottom range of the rates for

---

[27] *Love v. Rivendell II* (2018) 3-18-cv-03907-EDL.

the Northern District of California[28], regarded as one of the most expensive areas of practice in the country. Even if the Los Angeles area were considered to be analogous, as Judge Cousins decided when following the Los Angeles area rates in 2016, the Central District has largely abandoned these rates with nearly every judge to review the prevailing rates since July 2019, including Judge Wilson who wrote the original order in *Salinas v. Rite Aid* that began the adoption of the previous rate, determining that substantially increased rates of $400-$595 are now appropriate for the Central District.[29]

---

[28] The *Shaw* court referenced previously justified the requested $425/hr rate with reference to a case noting "In the Bay Area, 'reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.' " *Shaw v. Five M, LLC* (N.D. Cal., Feb. 27, 2017, No. 16-CV-03955-BLF) 2017 WL 747465, at *5; citing *In re LinkedIn User Privacy Litig.* (N.D. Cal. 2015) 309 FRD 573, 591-92), acknowledging that the requested rate was well under market.

[29] *Lindsay v. Grupo Glemka* (C.D. Cal. 2019) 2:18-cv-05136-MRW (Docket #40); *Fernandez v. Salgado* (C.D. Cal. 2019) 2:19-cv-01817-SK (Docket #36); *Whitaker v. Hieu* (C.D. Cal. 2019) 2:18-cv-10584-SVW-MRW (Docket #36); *Estrada v. Mirlan* (C.D. Cal. 2019) 5:18-cv-01892-JGB (Docket #59); *Lopez v. Getz* (C.D. Cal. 2019) 2:18-cv-02152-SJO-MRW (Docket #33); *Garibay v. Shen* (C.D. Cal. 2019) 2:18-cv-09719-RGK-E (Docket #44); *Langer v. Gutierrez* (C.D. Cal. 2019) 04963-AB-JPR (Docket #24); *Kish v. Amberheartclothing, Inc.* (C.D. Cal. 2019) 2:19-cv-01752-CJC-SPx (Docket #18); *Lammey v. Plaza Segundo* (C.D. Cal. 2019) 2:18-cv-04484-JAK-PLA (Docket #20); *Fernandez v. Brothers Auto Repair* (C.D. Cal. 2019) 2-19-cv-05194-DSF-JEM (Docket #18); *Arroyo v. Cervantes* (C.D. Cal. 2020) 8:19-cv-00182-AG-ADS (J. Selna presiding) (Docket #40)

---

Plaintiff's counsel seeks rates between $410 per hour and $650 per hour based on the experience of the attorneys that staffed this matter, as well as the prevailing rates of the community in which this matter is venued. Recognizing the split in authority in this district and believing the rates previously assessed are substantially lower than the prevailing rate, counsel sought an expert analysis from John O'Connor in another matter, an attorney regarded as one of the best in his field in market rate analysis.[30] Mr. O'Connor opined, based on his experience, and with reference to recent litigation that the rates sought by counsel in this matter are reasonable.

Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits.[31] These rates are in line with, and in fact lower, than those awarded in this district for similar litigation. The Northern District of California is no stranger to ADA litigation and has a history of awarding fees in line with the above requested rates, and in many cases even higher rates. A selection of rates

---

[30] Exhibit 3 – Declaration of John O'Connor

[31] *Camacho v. Bridgeport Financial, Inc.* (9th Cir. 2008) 523 F.3d 973, 979.

from various attorneys in ADA litigation in the Northern District is appended below:[32]

| Attorney | Rate | Case | Year |
|---|---|---|---|
| Geoffrey T. Holtz | $655/hr | *Armstrong* | 2011 |
| Scott LaBarre | $640/hr | *Elder* | 2011 |
| Tom Frankovich | $600/hr | *NJ Properties* | 2019 |
| Ernest Galvan | $560/hr | *Armstrong* | 2011 |
| Celia McGuinness | $550/hr | *Rodriguez* | 2014 |
| Anna Levine | $535/hr | *Elder* | 2011 |
| Sara Norman | $530/hr | *Armstrong* | 2011 |
| Jason Gong | $650/hr | *Dytch* | 2019 |
| J.D. Legal Assistant | $360/hr | *CREEC* | 2016 |
| Bill Lee | $900/hr | *CREEC* | 2016 |
| Tim Fox | $750/hr | *CREEC* | 2016 |
| Julie Wilensky | $500/hr | *CREEC* | 2016 |
| Celia McGuinness | $700/hr | *Martin* | 2018 |
| Paul Rein | $700/hr | *Martin* | 2018 |
| Russell Handy | $650/hr | *Rivendell II* | 2019 |
| Phyl Grace | $650/hr | *Rivendell II* | 2019 |

---

[32] *Armstrong v. Brown* (N.D. Cal. 2011) 805 F. Supp. 2d 918, 922-23 (Appendix A); *Elder v. National Conference of Bar Examiners* (N.D. Cal. Sept. 12, 2011) C-11-00199-SI, 2011 WL 4079623; *Rodriguez v. Barrita, Inc* (2014) 53 F.Supp.3d 1268; *Dytch v. Lazy Dog Restaurants, LLC* (N.D. Cal., 2019) 2019 WL 3928752; *Martin v. Diva Hospitality Group, Inc.* (2018) 2018 WL 6710705; *Civil Rights Education and Enforcement Center v. Ashford Hospitality Trust, Inc.* (2016) 2016 WL 1177950; *Chapman v. NJ Properties* (2019) 5:16-cv-02893-EJD; *Johnson v. Oak Creek* (2019) 5:18-cv-04645-EJD.

| | | | |
|---|---|---|---|
| Farrell Goodman | $410/hr | *Rivendell II* | 2019 |
| Richard Schramm | $860/hr | *Oak Creek* | 2019 |

As is demonstrated by the table above, counsel's requested rates are in line with others awarded within this community, despite the prior recent awards suggesting a lower rate. Even a non-attorney legal assistant was awarded a rate just $50/hr less than the lowest rates sought by counsel in this case. According to the Ninth Circuit, a district court commits reversible error by focusing only on fee awards previously awarded to a particular attorney without taking into account declarations by the attorneys explaining why an increased hourly rate is appropriate and determining what the prevailing market rate is.[33]

Not only are plaintiff's counsel's requested rates fully consistent with the market but they should expect to receive similar compensation based on counsel's experience. Both state and federal law advocates for full and substantial compensation for disability civil rights attorneys:

> Per statutory provisions by the United States Congress and the California Legislature to ensure that there are attorneys willing to perform the important function of securing the rights of disabled persons to "full participation in the social and economic life of the state" and to "full and equal access," it is necessary to provide substantial compensation for this work. Encouraging competent attorneys to handle ADA Title III cases is necessary for effective enforcement: former California Attorney General Dan Lungren, in a 1993 Opinion, held that California building officials could not

---

[33] *Roberts v. City of Honolulu* (9th Cir. 2019). 938 F.3d 1020, 1024.

independently enforce the ADA, and that enforcement was left primarily to private lawsuits.[34]

Present counsel's disability rights work has helped to shape ADA law with numerous, precedent setting opinions that were relied on by the above cases, including, but not limited to the following published cases: *Lozano v., C.A. Martinez Family Ltd. Partnership*, 129 F.Supp.3d 967 (S.D. Cal. 2015); *Fortyune v. City of Lomita*, 766 F.3d 1098 (9th Cir. 2014); *Cortez v. City of Porterville*, 5 F.Supp.3rd 1160 (E.D. Cal. 2014); *Johnson v. Wayside Prop., Inc.*, 41 F.Supp.3d 973 (E.D. Cal. 2014); *Daubert v. Lindsay Unified School District*, 760 F.3d 982 (9th Cir. 2014); *Munson v. Del Taco, Inc.*, 46 Cal.4th 66 (2009); *Nicholls v. Holiday Panay Marina, L.P.*, 93 Cal.Rptr.3d 309 (Cal. App. 4th 2009); *Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159 (S.D. Cal. 2009); *Kittok v. Leslie's Poolmart, Inc.*, 687 F. Supp. 2d 953 (C.D. Cal. 2009); *Deanda v. Sav. Inv., Inc.*, 267 F. App'x 675, 676 (9th Cir. 2008); *Miller v. California Speedway Corp.* (9th Cir. 2008) 536 F.3d 1010; *Munson v. Del Taco, Inc.*, 522 F.3d 997 (9th Cir. 2008); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126 (C.D. Cal. 2005); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133 (9th Cir. 2002); *Wyatt v. Ralphs Grocery Co.*, 65 Fed.Appx. 589 (9th Cir. 2003); *Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000); *Wyatt v. Liljenquist*, 96 F. Supp. 2d 1062 (C.D. Cal. 2000).

"Indeed, were it not for the efforts of those attorneys willing to undertake the representation of ADA plaintiffs, there would be little, if

---

[34] *Blackwell v. Foley* (N.D. Cal. 2010) 724 F. Supp. 2d 1068, 1075

any, enforcement of this landmark statute."[35] Based on the evidence of market rate, the skill of the lawyers representing the Plaintiff, and the public interest in encouraging the private bar in enforcing the ADA, plaintiff's counsels' requested rates should be approved by this court.

## B.      Hours Reasonably Expended

Independent from establishing the rate to apply, the Court should determine the number of hours reasonably expended in this litigation: The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorneys, must be a calculation of the attorneys' services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only approach that can claim objectivity, a claim which is 'obviously vital' to the prestige of the bar and the courts." *Serrano v. Priest*, 20 Cal.3d 25, 49 (1977), *citing Lindy Bros. Builders, Inc. of Phila. v. American Radiator*, 487 F.2d 161 (3rd Cir 1973).

In prosecuting this matter within the guidelines imposed by General Order 56, the case was not over litigated. Defendant served a Rule 68 offer of judgment in lieu of participating in the required site inspection and the plaintiff promptly accepted. The case reasonably and necessarily involved pre-filing investigation, complaint drafting, emails, letters, phone conversations, and court filings, and this motion and the other trappings of a litigated case in which a Plaintiff could prevail.

Plaintiff's attorneys have expended more than 13 hours to date and, as agreed by the parties, estimate another 8 hours for dealing with an opposition brief, drafting the reply, and attendance at oral argument.

---

[35] *Hansen v. Deercreek Plaza, LLC* (S.D.Fla. 2006) 420 F.Supp.2d 1346, 1349

As is clear from the billing statement, there has been no overbilling in this case and Plaintiff has attempted to specialize all hours spent to reduce the total number of hours involved in the matter.

All of the hours submitted to the court in the accompanying declaration of Mark Potter[36] and the attached billing were reasonably incurred in the prosecution of this case. Each discrete task should be viewed with reference to the amount of time spent doing it and assessing if that task was reasonably incurred and if that task was accomplished in a reasonable amount of time.

## IV. HENSLEY FACTORS

In *Hensley v. Eckerhart*,[37] the Supreme Court stated that the lodestar is the "presumptively reasonable fee amount" and that the Court can adjust upward or downward by a multiplier in "rare" or "exceptional" cases only.[38] Additionally, the *Hensley* court outlined twelve factors that a Court may consider when determining the appropriate fee award or any departure from it. Many of the factors are already subsumed into the lodestar discussion but plaintiff will briefly discuss each factor. Plaintiff seeks no modification of the lodestar.

### A. Time and Labor Required

As stated above, the plaintiff showed billing judgment and restraint. The case was not over litigated and plaintiff's counsel expended

---

[36] Exhibit 1

[37] *Hensley v. Eckerhart* (1983) 461 U.S. 424

[38] *Id.* at 433; *Van Gerwen v. Guarantee Mutual Life*, 214 F.3d 1041, 1045 (9th Cir. 2000); *see also Welch*, 480 F.3d at 946.

less than two full work days. The plaintiff seeks no multiplier as the time expended will be compensated by the lodestar.

### B. Novelty and Difficulty of Issues

The Americans with Disabilities Act itself and its interaction with California State Law is ever evolving and involves new issues and new challenges on a constant basis. Aside from the fairly novel area of Americans with Disabilities Act work in general, this case presented no significant legal issues of first impression and plaintiff seeks no multiplier based on this issue as counsel's rate incorporates this specialized expertise.

### C. Skill Required to Perform Legal Service

The Americans with Disabilities Act was passed in 1990 and the Unruh Civil Rights Act was amended in 1992 to incorporate the ADA. There are only a handful of attorneys with expertise in the area. Access under Title III of the Americans with Disabilities Act is predicated upon requirements to provide access to existing public accommodations, new construction and alterations to existing buildings. Those requirements in existing public accommodations turn on whether the removal of architectural barriers is "readily achievable." In turn, there is a plethora of federal regulations, Department of Justice advisory opinions, interpretive manuals and case law that is argued by both plaintiffs and defendants as to what constitutes architectural barriers and the extent of the remedial measures necessary, if any, to remove the architectural barrier. Furthermore, there is the overlaying application of Title 24 of the California Code of Regulations requirements to public accommodations

which were constructed or altered after 1982, and the American National Standards Institute (ANSI) between 1970 and 1982.

A successful prosecution of disability access cases is dependent upon a plaintiff's attorney having a thorough knowledge of the ADA and all its implementing regulations, Americans With Disabilities Act Accessibility Guidelines, Title 24 of the California Code of Regulations, ANSI standards, and the relevant sections for the California Health and Safety Code, the California Civil Code, and the California Government Code. In addition, an intimacy with the body of case law which has developed around the ADA (among which over two dozen published decisions were handled by plaintiff's counsel's office) and state statutory schemes, and the ability to couple this knowledge with a practical, strategic approach to interfacing with defendants, their own personal counsel, insurance defense attorneys, insurance carriers and the Court is absolutely essential.

In short, handling disability access cases demand the services of an attorney trained and specializing in the area of law. This case did not present specialized or skillful challenges and was a fairly straight-forward application of the law.

### D.    Preclusion of Other Work

Plaintiff's attorneys have spent around two full work days in prosecuting this case. That time could not be used, simultaneously, for other cases or other clients. Thus, the work on this case precluded other work that could have and would have been done and billed for. Nonetheless, the lodestar fully compensates for that work.

### E.    Customary Fee

As covered above, the rates and fees charged by plaintiff's counsel are market rates.

### F.    Fixed or Contingent Fee

As is the case with virtually all civil rights cases, the fees in this case were contingent upon prevailing. Had the plaintiff not prevailed, the plaintiff's attorneys would not be able to recover monies to compensate them for the outlay of time spent in prosecuting this case. Nonetheless, plaintiff's counsel is not seeking a multiplier.

### G.    Time Limitations

There were no unique time limitations imposed by either the client or the circumstances.

### H.    Amount Involved and Results Obtained

The Plaintiff brought claims under the ADA and a companion damages claim under Unruh Civil Rights Act for violations of his federally guaranteed rights under the ADA and sought remedies under both acts. It's difficult to measure the "damage" caused by denial of access. Thus, the Unruh Civil Rights Act has a minimum that a defendant must pay. In an Unruh case before the California Supreme Court, the defendant violated the law but argued that it had "not harmed a single hair on the plaintiff's head or subjected him to the slightest deprivation or embarrassment of any kind."[39] The Court stated, "by passing the Unruh Act, the Legislature established that arbitrary sex discrimination by

---

[39] *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 33 .

businesses is per se injurious. Section 51 provides that all patrons are entitled to equal treatment. Section 52 provides for minimum statutory damages of $250 [previous minimum] for every violation of section 51, regardless of the plaintiff's actual damages." *Id.* at 33. The minimum damage award that was in effect for the plaintiff's case was $4,000. Courts just don't award that much money for violations that do not involve impact injury. For example, in one of the only published decision to actually identify a damage award: *Boemio v. Love's Restaurant*,[40] , the court held a bench trial, found for the plaintiff, and awarded $1,000 (then the minimum) although the plaintiff had to urinate in the parking lot. This case was no different from other access denial cases with respect to damages. It simply never involved large sums of money. Here, Mr. Johnson received $6,500 damages agreed to in this matter, injunctive relief, and an explicit agreement to attorney's fees. He easily qualifies as a prevailing party entitled to full attorney's fees and costs.

## I.  Experience and Ability of Attorneys

See discussion under "Hourly Rates" above.

## J.  Undesirability of the Case

This case, like many small dollar civil rights cases, is low on the desirability scale.  The clientele is largely very low income or indigent. Payment is completely dependent upon winning. It is usually big business, specialized defense counsel, and insurance companies on the other side. However, no adjustment is requested.

---

[40] *Boemio v. Love's Restaurant* (S.D. Cal. 1997) 954 F.Supp. 204

**K.    Nature of Relationship with Client**

The Center for Disability Access has no relationship with Mr. Johnson other than in representing him in his ADA/Unruh claims.

**L.    Awards in Similar Cases.**

This matter is discussed above.

## V.   LITIGATION COSTS

The plaintiff seeks $875.00 in costs. This includes traditional costs such as the service cost ($75) and the filing fee ($400) as well as the litigation expenses that includes the investigation ($400). Section 505 of the Americans with Disabilities Act (42 U.S.C. § 12205) authorizes reasonable attorney's fees, including "litigation expenses and costs," in any action brought under the Act. This includes all costs normally associated with litigation including investigative costs:

> According to committee reports, Congress included the term "litigation expenses" in order to authorize a court to shift costs such as expert witness fees, travel expenses, and the preparation of exhibits. See H.R. Rpt. No. 101-485(III) at 73, reprinted in 1990 U.S.C.C.A.N. 445, 496 (Report of the Committee on the Judiciary) ("Litigation expenses include the costs of expert witnesses. This provision explicitly incorporates the phrase 'including litigation expenses' to respond to rulings of the Supreme Court that items such as expert witness fees, travel expenses, etc., be explicitly included if intended to be covered under an attorney's fee provision."); H.R. Rpt. No. 101-485(II) at 140, reprinted in 1990 U.S.C.C.A.N. 303, 423 (Report of the Committee on

Education and Labor) ("Litigation expenses include the costs of experts and the preparation of exhibits.").[41]

"The federal statute, unlike the state statutes, explicitly provides for not only attorney's fees but also litigation expenses and costs."[42]

## VI. CONCLUSION

The plaintiff respectfully requests that his motion be granted and he be awarded $11,820.00.


Dated: April 28, 2020                  CENTER FOR DISABILITY ACCESS


                                       By:    /s/ Dennis Price
                                              Dennis Price, Esq.
                                              Attorney for Plaintiff

---

[41] *Lovell v. Chandler* (9th Cir. 2002) 303 F.3d 1039, 1058

[42] *Saldana-Neily v. Taco Bell of Am., Inc.* (N.D. Cal. 2008) 2008 WL 793872, *3